UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WILLIAMS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. CV 15-01743-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## INTRODUCTION

Brian Williams ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability and disability insurance benefits ("DIB") following an administrative law judge's ("ALJ") decision that Plaintiff had not been under a disability, as defined in the Social Security Act. Administrative Record ("AR") 19. For the reasons below, the Commissioner's decision is AFFIRMED.

/ / /

/ / /

/ / /

/ / /

## II.

## PROCEEDINGS BELOW

On February 1, 2011, Plaintiff filed an application for DIB, alleging disability beginning October 1, 2010 (his alleged onset date ("AOD")). AR 10. Plaintiff's claim was denied initially on March 16, 2011—and on March 24, 2011, Plaintiff filed a written request for hearing. *Id.* Following Plaintiff's first hearing on March 23, 2012, the ALJ ordered additional testing. *Id.* A supplemental hearing was convened on October 19, 2012, but was adjourned so additional evidence could be obtained. *Id.* A third hearing was convened on April 30, 2013. *Id.* Represented by counsel, Plaintiff appeared and testified—as did an impartial vocational expert ("VE"). *Id.* An impartial medical expert ("ME"), Paul Grodan, M.D., appeared telephonically. *Id.* On July 12, 2013, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act,[1] from the AOD through the date of the decision. *Id.* at 19-20. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. *Id.* at 25-30. Plaintiff filed the instant action on March 10, 2015. Dkt. No. 1.

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled. 20 C.F.R. §§ 404.1520, 416.920; *see also Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the AOD. AR 12. At **step two**, the ALJ found that Plaintiff has the following severe impairments: emphysema, left knee arthritis, and hypertension. *Id.* At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

///

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

Subpart P, Appendix 1." *Id.* at 13 (citations omitted). At **step four**, the ALJ found that Plaintiff possessed the residual functional capacity ("RFC") to:

> [P]erform light work ... in so much as he could lift and carry 20 pounds occasionally and ten pounds frequently; had no restriction in standing; could only walk four hours in an eight-hour day; no restriction in sitting; no crouching or kneeling; cannot be around fumes, dusts, chemicals, temperature extremes, or smoke; and is restricted to occasional climbing of ladders and stooping.

*Id.* Given his RFC, the ALJ determined that Plaintiff is unable to perform his past relevant work as a heavy equipment mechanic. *Id.* at 18. At **step five**, however, the ALJ found that, considering Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [he] can perform." *Id.* (citations omitted). Thus, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act. *Id.* at 19.

## III.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.
## DISCUSSION

Plaintiff argues that the ALJ's finding at step five of the sequential evaluation process—that Plaintiff "could perform the alternate work of electronics assembler, mail sorter and ticket taker/usher/cashier," *see* Plaintiff's Memorandum in Support of Complaint ("Pl. Memo.") at 6, Dkt. No. 22—is not supported by substantial evidence in the record. *See id.* at 3-11; *see also* Plaintiff's Reply ("Pl. Reply") at 3-7, Dkt. No. 26. The Commissioner argues that the ALJ properly identified jobs that exist in significant numbers that Plaintiff can perform. Memorandum in Support of Defendant's Answer ("Def. Memo.") at 3-8, Dkt. No. 25.

### A. <u>Pertinent Law</u>

Once the ALJ concludes at step four of the sequential evaluation process that a claimant cannot return to his past work, the ALJ must then determine, at step five, whether there are jobs existing in significant number in the national economy that the claimant is able to perform consistent with any impairments and/or limitations

identified at step two. *Gonzales v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990). At step five, the Commissioner bears the burden of proof to identify specific jobs a claimant can still perform. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The Commissioner can meet this burden (1) by calling on a VE to testify as to what jobs the claimant can do given her RFC, and the availability of any identified jobs in the national economy; and (2) by relying on the Medical-Vocational Guidelines ("grids"). 20 C.F.R. §§ 404.1520(g), 404.1562; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

When a claimant has solely exertional (strength-related) limitations, the ALJ must rely on the grids to determine disability status. *Lounsburry*, 468 F.3d at 1114.

> The grids ... present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. The grids categorize jobs by their physical-exertional requirements, and set forth a table for each category. A claimant's placement with the appropriate table is determined by applying a matrix of four factors[,] ... a claimant's age, education, previous work experience, and physical ability. For each combination of these factors, they direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements. If a claimant is found able to work jobs that exist in significant numbers, the claimant is generally considered not disabled.

*Id.* at 1114-15 (internal citations omitted).

However, the grids may not fully apply if the claimant's impairment is non-exertional[2] because non-exertional impairments may, if sufficiently severe, limit a claimant's RFC in ways not contemplated by the grids. *Id.* at 1115; *see also, e.g., Tackett*, 180 F.3d at 1103 ("The grids should be applied only where a claimant's functional limitations fall into a standardized pattern 'accurately and completely'

---

[2] Non-exertional limitations include those mental, sensory, postural, manipulative, or environmental (*e.g.*, inability to tolerate dust or fumes) limitations that affect a claimant's ability to work. *See Burkhart*, 856 F.3d at 1340-41.

described by the grids."); *Burkhart v. Bowen*, 856 F.3d 1335, 1340 (9th Cir. 1988) ("[T]he grids will be inappropriate where the predicate for using the grids—the ability to perform a full range of either medium, light or sedentary activities—is not present."). In such cases, the ALJ must take vocational expert testimony, and then identify specific jobs within the claimant's capabilities. *Burkhart*, 856 F.3d at 1340.

Where a claimant has exertional and non-exertional limitations, the ALJ must first consult the grids. *Lounsburry*, 468 F.3d at 1115. If the grids direct a disability finding, the disability finding must be accepted. *Cooper v. Sullivan*, 880 F.2d 1152, 1157 (9th Cir. 1989). However, the grids may not be used to direct a *nondisability* finding. *Lounsburry*, 468 F.3d at 1116. Thus, "where a person with exertional and non-exertional limitations is 'disabled' under the grids, there is no need to examine the effect of the non-exertional limitations. But if the same person is not disabled under the grids, the non-exertional limitations must be examined separately." *Id.*; *see also Moore v. Apfel*, 216 F.3d 864, 869-70 (9th Cir. 2000) (where the grids do not adequately take into account a claimant's abilities and limitations, the grids are to be used only as a framework, and a vocational expert must be consulted).

**B.   Analysis**

Plaintiff argues that the ALJ erred by not posing hypotheticals to the VE that mirrored the language used in the ALJ's eventual RFC assessment. *See* Pl. Memo. at 5-7; *see also* Pl. Reply at 3-4. The Commissioner argues, in turn, that "the ALJ's hypothetical to the [VE] mirrored his RFC finding," and that even if the ALJ "erred in his hypothetical question..., any error would be harmless as *none* of the jobs the [VE] identified included an exposure to irritants per the *DOT*." Def. Memo. at 5-6.

**1.   Hypotheticals Posed to the Vocational Expert**

Here, the ALJ concluded that Plaintiff had the RFC to perform "light work," and then assessed exertional and non-exertional limitations. AR 13. The ALJ thus consulted the grids, and found that had Plaintiff possessed the RFC:

> [T]o perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.

*Id.* at 19. The ALJ therefore took VE testimony at Plaintiff's third administrative hearing. *See id.* at 47-55.

At that hearing, the ALJ posed a hypothetical question to the VE in which he stated, *inter alia*, that the hypothetical person "would not be able to ... be around fumes, dust, chemicals, temperature extremes, or smoke." *Id.* at 47-48. The ALJ clarified, however, that "I am not talking about unusual I suppose oxygen is a fume, [Plaintiff] could be around that. So the unusual elements of destructive fumes, dust, chemicals." *Id.* at 48. The ALJ asked the VE whether such a person could perform Plaintiff's past heavy work and the VE said no. *Id.* However, according to the VE, such a person would be able to perform other jobs existing in significant numbers in the national economy—specifically identifying the job of electrical assembler. *Id.*; *Dictionary of Occupational Titles* ("DOT") 729.384-026, 1991 WL 679710.

Later, upon being prompted by the ALJ to give examples of other light work jobs that the hypothetical person could perform, the VE asked the ALJ to clarify the environmental limitations. *See* AR 49. Specifically, the VE asked as follows:

> A    Okay, they're saying for instance excessive dust, fumes, gases, or are you saying no fumes, odors --
> Q    Well, I am saying that we all are around dust, fumes, and gases to some extent, but he would not be able to be in an environment that produced excessive amounts of these things.

*Id.* The VE identified two jobs: mail clerk (DOT 209.687-026, 1991 WL 671813) and ticket taker (DOT 344.667-010, 1991 WL 672863). *See id.* at 49-50.

From the foregoing, it appears that the ALJ has set forth three formulations of Plaintiff's "fumes, dust, chemicals, temperature extremes, or smoke" limitation.

7

First, the RFC assessment in the ALJ's written decision states that Plaintiff "cannot be around fumes, dusts, chemicals, temperature extremes, or smoke[.]" *Id.* at 13. This version of the limitation is absolute and suggests that any exposure—no matter the concentration—is unacceptable. Second, while the pre-clarification version of the hypothetical posed to the VE mirrors the RFC assessment in the ALJ's decision, the post-clarification version adds a new "destructive" element to the description. *Id.* at 48. It may be that the post-clarification version is fundamentally the same as the ALJ's final RFC assessment—and that the destructive nature of the fumes, dust, and chemicals is implied therein though not expressly stated. But even if that is the case, it is not the case, as the Commissioner suggests, that the hypothetical question the ALJ posed to the VE "*mirrored* his RFC finding[.]" Def. Memo. at 5 (emphasis added). Finally, the ALJ's response to the VE's question, *i.e.*, the Plaintiff cannot "be in an environment that produced *excessive* amounts of" dust, fumes, and gases, *id.* at 49 (emphasis added), clearly deviates from the RFC in the ALJ's decision.

Plaintiff cites Social Security Ruling ("SSR") 85-15, 1985 WL 56857 (Jan. 1, 1985), to support his argument. *See* AR 7. SSR 85-15 does not control here,[3] but it does help illustrate the difference between *cannot be around* and *cannot be around excessive amounts*. SSR 85-15 provides that a "person may have the physical and mental capacity to perform certain functions in certain places, but to do so may aggravate his or her impairment(s).... Surroundings which an individual may need to avoid because of impairment include those involving extremes of temperature, ... fumes, dust, and poor ventilation." SSR 85-15 at *8. And regarding the impact of environmental restrictions on one's ability to work, SSR 85-15 provides that:

> Where a person has a medical restriction to avoid *excessive amounts* of noise, dust, etc., *the impact on the broad world of*

---

[3] SSR 85-15 provides guidance only in cases where a claimant asserts solely non-exertional impairments. *See Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122, 116 S. Ct. 1356, 134 L. Ed. 2d 524 (1996).

> *work would be minimal* because most job environments do not involve great notice, amounts of dust, etc.
>
> Where an individual can tolerate *very little* noise, dust, etc., *the impact on the ability to work would be considerable* because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions.

*Id.* (emphasis added).

"For a hypothetical [posed to the VE] to be reliable and have evidentiary value, it must accurately reflect the claimant's limitations." *Castro v. Astrue,* 2011 WL 3500995, at *12 (E.D. Cal. Aug. 9, 2011) (citing *Thomas v. Barnhart,* 278 F.3d 947, 956 (9th Cir. 2002); *Matthews v. Shalala,* 10 F.3d 678, 681 (9th Cir. 1993)). To avoid ambiguity, hypotheticals should be posed to a VE in the same way that the limitation is phrased in the ALJ's RFC assessment. *See id.* Here, the hypotheticals were not posed to the VE in the same way that the limitation is phrased in the RFC assessment in the ALJ's written decision. This constitutes error. The Court agrees with the Commissioner, however, that the ALJ's error is harmless.

### 2. Harmless Error

"The best source for how a job is generally performed is usually the [DOT]." *Pinto v. Massanari,* 249 F.3d 840, 845-46 (9th Cir. 2001) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (observing that the DOT is a source of reliable job information). Moreover, the DOT, and its Selected Characteristics of Occupations ("SCO") supplement, "may be relied upon as the *rebuttable presumptive authority* regarding job classifications." *See Bell ex rel. Bell v. Colvin,* 2015 WL 3465764, at *5 (C.D. Cal. June 1, 2015) (emphasis added) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir. 1995); *Villa v. Heckler,* 797 F.2d 794, 798 (9th Cir. 1986)).

In addition to providing general information about jobs, the DOT, *inter alia,* rates the presence of certain environmental conditions in such jobs as: "not present" (activity or condition does not exist), "occasionally" (exists up to 1/3 of the time),

"frequently" (exists from 1/3 to 2/3 of the time), or "constantly" (exists 2/3 or more of the time). *See* SCO Appx. D. Environmental conditions are broken down into categories. Relevant here are: atmospheric conditions; exposure to toxic, caustic chemicals; extreme cold and heat; and other environmental conditions. *Id.*; *see also* AR 13 (noting that Plaintiff "cannot be around fumes, dusts, chemicals, temperature extremes, or smoke"). *Atmospheric Conditions* is defined as exposure to conditions that affect the respiratory system, eyes or skin, such as fumes, noxious odors, dusts, mists, gases, and poor ventilation. *See* SCO Appx. D. *Exposure to Toxic, Caustic Chemicals* is defined as exposure to possible injury from toxic or caustic chemicals. *Id.* *Extreme Heat and Cold* is defined as exposure to non-weather-related hot and cold temperatures. *Id.* *Other Environmental Conditions* is defined as conditions including but not limited to settings such as demolishing parts of buildings to reach and combat fires and rescue persons endangered by fire and smoke. *Id.*

Here, according to the classification information for the jobs identified by the VE as jobs Plaintiff could perform notwithstanding his limitations, *i.e.*, ticket taker, mail clerk, and electrical assembler, none involves working in an environment with atmospheric conditions; extreme heat or cold; exposure to toxic, caustic chemicals; *or* other environmental conditions. *See* DOT 209.687-026, 1991 WL 671813; DOT 344.667-010, 1991 WL 672863; DOT 729.384-026, 1991 WL 679710. Thus, even though "the ALJ's hypothetical questions did not accurately reflect [P]laintiff's environmental limitations, any error is harmless and does not warrant reversal." *See Shubin v. Colvin*, 2013 WL 6002140, at *6 (C.D. Cal. Nov. 12, 2013) (finding that because none of the jobs the VE identified involved working in an environment with atmospheric conditions, "a hypothetical question that precluded all exposure to the environmental conditions identified by the ALJ would ultimately have had no bearing on the [VE]'s testimony about the availability of alternate jobs").

Plaintiff challenges the Commissioner's harmless error claim by arguing that *The Revised Handbook for Analyzing Jobs* shows that the DOT's "Atmospheric

Conditions" category "does not classify exposure to all pulmonary irritants; rather, it classifies exposure to the high level or concentrated type of exposure. Indeed, [it] specifically references exposure to 'noxious' odors as opposed to regular odors." Pl. Reply at 5.[4] Thus, according to Plaintiff, "the DOT classifies exposure to fairly concentrated and noxious pulmonary in this category," and not "exposure to regular dusts, fumes, chemicals and other similar pulmonary irritants." *Id.*

The Court is not persuaded by Plaintiff's argument. As noted above, both the SCO and the RHAJ define atmospheric conditions as "exposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation" which "affect the respiratory system, eyes, or the skin." *See* SCO Appx. D; RHAJ at 12-11. Neither definition includes the words "high level," "concentrated," or "fairly concentrated." And given that other environmental condition factors and definitions in Appendix D of the SCO clearly require heightened exposure (*e.g.*, "*extreme* cold," "*extreme* heat," and "exposure to *toxic, caustic* chemicals"), the absence of such language in the atmospheric conditions definition suggests that its omission was purposeful, not an oversight. As Plaintiff notes, the atmospheric conditions definition does require exposure to "*noxious* odors" as opposed to regular odors. SCO Appx. D (emphasis added); Pl. Reply at 5. But "noxious" modifies "odors," not the entire definition— and the ALJ did not include an odors limitation in Plaintiff's RFC. *See* AR 13.

Plaintiff attempts to bolster his claim by providing examples of occupations that would "clearly" expose an individual to atmospheric conditions yet garner "not present" ratings because, while they "expose the individual to pulmonary irritants, the individual is not exposed to the type of non-noxious or concentrated pulmonary irritants that is contemplated in the category of Atmospheric Conditions under the DOT." Pl. Reply at 6. Specifically, Plaintiff identifies two jobs: Air Analyst (DOT

---

[4] *The Revised Handbook for Analyzing Jobs* ("RHAJ") is a companion publication to the DOT containing "the methodology and benchmarks used ... in gathering and recording information about jobs." *See* U.S. Dep't of Labor, RHAJ (1991).

11

012.261-010, 1991 WL 646364) and Dust Mixer (DOT 510.685-010, 1991 WL 673717). Per the DOT, an Air Analyst, *inter alia*, "[a]nalyzes samples of air in industrial establishments or other work areas to determine amount of suspended foreign particles and effectiveness of control methods, using dust collectors[,]" and an Dust Mixer, *inter alia*, "[t]ends machines that mix flue and milk of lime to facilitate reprocessing in copper smelter[.]" DOT 012.261-010; DOT 510.685-010. As noted above, the DOT provides that atmospheric conditions are "not present" for both jobs. *Id.* Plaintiff argues that this substantiates his "concentrated pulmonary irritants" assertion. *See* Pl. Reply at 6. However, Plaintiff cites no authority, aside from the relevant DOT codes, to rebut the DOT's "presumptive authority regarding job classifications." *Bell ex rel. Bell*, 2015 WL 3465764, at *5. Instead, Plaintiff appears to argue that because individuals holding such jobs work around pulmonary irritants, the Court should assume—contrary to the DOT—that they are necessarily exposed to such pulmonary irritants. The Court declines to do so.

Given the foregoing, it is clear "that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommassetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). The Court therefore finds that the ALJ's decision is "legally valid, despite such error." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Accordingly, remand is not warranted in this matter.

### 3. Other Arguments

Plaintiff further contends that the ALJ's determination that he could perform the work of an electronics assembler "is faulty for another reason: the ALJ failed to make the requisite findings ... that [he] could transfer any skills that he obtained in order to perform alternate semiskilled work." Pl. Memo. at 8. The Court need not address this assertion, however, as it has already been determined that, based on his RFC, Plaintiff can also perform the work of either a mail clerk or ticket taker. *See* 20 C.F.R. §§ 404.1566(b), 416.966(b) ("Work exists in the national economy when there are a significant number of jobs (*in one or more occupations*) having

requirements which you are able to meet with your physical or mental abilities and vocational qualifications.") (emphasis added); *Tommasetti*, 533 F.3d at 1044 (while the ALJ erred at step four by finding that the claimant could perform past work, this error was harmless because the ALJ properly found that the claimant could perform work as a semiconductor assembler at step five); *see also Udell v. Colvin*, 2013 WL 4046465, at *7 (S.D. Cal. Aug. 8, 2013) ("[O]ne job ... is sufficient, as long as the one occupation still has a significant number of positions that exist in the national economy."); *Gaspard v. Comm'r Soc. Sec. Admin.*, 609 F. Supp. 2d 607, 617 (E.D. Tex. 2009) (*citing Evans v. Chater*, 55 F.3d 530, 532–33 (10th Cir. 1995)) ("The Commissioner's burden ... is satisfied by showing the existence of only one job with a significant number of available positions that the claimant can perform.").

In sum, the Court finds that the ALJ erred by posing hypotheticals to the VE at the administrative hearing that were phrased differently than the limitations in the RFC assessment in the ALJ's written decision, but that those errors were harmless.

## V.
## CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: November 30, 2015

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

## NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**